## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **MELVIN X. LINDSAY,** : | |
| **Plaintiff** : | **CIVIL ACTION NO. 1:04-0180** |
| v. : | **(CALDWELL, D.J.)** |
| | **(MANNION, M.J.)** |
| **JOSEPH W. CHESNEY, JOHN** : | |
| **SOMMERS, CHARLES** | |
| **ERICKSON, DAVID WILDE,** : | |
| **Captain, J.R. BUBB, OMAR** | |
| **HAMILTON, JOHN MACK,** : | |
| **JEFFREY BEARD and MICHAEL** | |
| **FARNAN, Chief Counsel,** : | |
| **Defendants** : | |

## REPORT AND RECOMMENDATION

The plaintiff, Melvin X. Lindsay, formerly an inmate at the State Correctional institution at Retreat ("SCI-Retreat"), Hunlock Creek, Pennsylvania[1] filed this *pro se* civil rights action pursuant to 42 U.S.C § 1983 on February 23, 2004. (Doc. No. 1). There are nine (9) defendants who are various officials of the Pennsylvania Department of Corrections ("DOC"), and officials and/or employees of SCI-Retreat. These individuals are identified in more detail below. The complaint alleges that the defendants retaliated against the plaintiff because he sought to assert his First Amendment right to practice his Nation of Islam faith. The plaintiff seeks injunctive and declaratory relief, and monetary damages. Presently before the court is the defendants'

---

[1]The plaintiff is presently incarcerated at the State Correctional Institution at Fayette, ("SCI-Fayette"), LaBelle, Pennsylvania.

motion for summary judgment. (Doc. No. 49).

## I.  **PROCEDURAL HISTORY**

The plaintiff's complaint was filed on January 26, 2004. (Doc. No. 1). Summons issued on the named defendant on February 4, 2004. The plaintiff filed a motion for appointment of counsel on April 16, 2004, which was denied by order dated April 19, 2004. (Doc. Nos. 16, 17).  The plaintiff filed a motion for entry of default against the defendants which was dismissed as moot by order dated April 28, 2004. (Doc. Nos. 18, 25).

After being granted an extension of time in which to do so, the defendants filed an answer to the complaint on April 30, 2004. (Doc. No. 26). The plaintiff filed a reply to the answer on May 13, 2004. (Doc. No. 27). The plaintiff filed an "affidavit" on July 6, 2004. (Doc. No. 28).  The plaintiff was transferred to SCI-Fayette on or about November 12, 2004.  The defendants took the deposition of the plaintiff on November 23, 2004. On January 31, 2005, the defendants filed a motion for summary judgment.  After being granted an extension of time to do so, the defendants filed a brief with supporting documents on March 14, 2005. (Doc. No. 57).  Although the plaintiff requested, and was granted,  two extensions of time to respond to the defendants' motion for summary judgment, (Doc. Nos. 59 and 61)2005, the plaintiff did not file a brief in opposition to the motion for summary judgment. It is , therefore, deemed unopposed in accordance with MDPA LR 7.6. The

merits of the plaintiff's action will, however, be considered in accordance with Stackhouse v. Mazurkiewicz 951 F. 2d 29 (3d Cir. 1991).

The defendants are Joseph W. Chesney, Superintendent SCI-Retreat; John Sommers, Deputy Superintendent, SCI-Retreat; Charles Erickson, Deputy Superintendent, SCI-Retreat; Capt. David Wilde, SCI-Retreat Corrections Officer; Lt. J. R. Bubb, SCI-Retreat Corrections Officer; Omar Hamilton, SCI-Retreat Corrections Officer; John Mack, Department of Corrections ("DOC") Program Director; Jeffrey Beard, DOC Secretary, and Michael Farnan, DOC chief counsel.

## II.  **STANDARD OF REVIEW**

Presently before the court is the defendants' motion for partial summary judgment. Summary judgment is appropriate when supporting materials, such as affidavits and other documentation, show there are no material issues of fact to be resolved, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *see* Turner v. Schering-Plough Corp., 901 F. 2d 335, 340 (3d Cir. 1990). The Supreme Court has ruled that Fed. R. Civ. P. 56(c) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp v. Catrett, 477 U.S. 317 (1986). The Court further stated that "Rule 56

(e)...requires the non-moving party to go beyond the pleadings and by [his] own affidavits, or by depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." Id. at 324; Lujan v. National Wildlife Fed'n, 497 U.S. 871, 888 (1990); Pastore v. Bell Tel. Co. of Pennsylvania, 24 F. 3d 508, 511 (3d Cir. 1994) (quoting Harter v. GAF Corp., 967 F. 2d 846, 852 (3d Cir. 1992)).  The party moving for summary judgment bears the burden of showing the absence of a genuine issue as to any material fact. Id. at 323; Young v. Quinlan, 960 F. 2d 351, 357 (3d Cir. 1992).

To determine whether the non-moving party has met his or her burden, the court must focus on both the genuineness and the materiality of the factual issues raised by the non-movant. "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (emphasis in original).  A dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Anderson, 477 U.S at 250.  A disputed fact is material when it could affect the outcome of the suit under the governing substantive law. Anderson, 477 U.S. at 248.  If the court determines that "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial'." Matsushita Elec. Industrial Co. v. Zenith

Radio, 475 U.S. 574, 587 (1986) (quoting First Nat. Bank of Ariz. v. Cities Service Co., 391 U.S. 253, 289 (1968)). All inferences, however, "'should be drawn in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true'." Pastore, 24 F. 3d at 512 (quoting Big Apple BMW, Inc. v. BMW of N. America, Inc., 974 F. 2d 1358, 1363 (3d Cir. 1992), cert. denied, 507 U.S. 912 (1993)).

With the above principles in mind, the court will address the allegations in the complaint, the materials and documentation submitted by the defendants in the motion for summary judgment to pierce those allegations, in order to determine whether a genuine issue of material fact regarding the retaliation claim remains.

## III.     DISCUSSION

The plaintiff is proceeding *pro se*. This court is required to liberally construe a *pro se* plaintiff's pleadings. Haines v. Kerner, 404 U.S. 519, 520 (1972). In doing so, however, a court need not credit a plaintiff's "bald assertions" or "legal conclusions." Morse v. Lower Merion Sch. Dist., 132 F. 3d 902, 906 (3d Cir. 1997).

A prisoner alleging retaliation must show: (1) constitutionally protected conduct, (2) an adverse action by prison officials sufficient to deter a person of ordinary firmness from exercising his [constitutional] rights, and (3) a causal

link between the exercise of his constitutional rights and the adverse action taken against him. Once an inmate has made a *prima facie* showing, the burden shifts to the defendant to prove by a preponderance of the evidence that "it would have made the same decision absent the protected conduct for reasons reasonably related to a penological interest." Rauser v. Horn, 241 F.3d 330, 333-34 (3d Cir. 2001)(incorporating Turner v. Safley, 482 U.S. 78, 79). An inmate may prevail on a retaliation claim if he can prove that prison officials retaliated against him for use of the inmate grievance system and previous lawsuits. *See* Mitchell v. Horn, 318 F.3d 523 (3d Cir.2003)(citing Babcock v. White, 102 F.3d 267, 275-76 (7th Cir. 1996).

    The plaintiff's complaint alleges that on June 20, 2003, the plaintiff was placed in the Restricted Housing Unit ("RHU") in Administrative Custody by defendant Hamilton pending an investigation as to whether the plaintiff had participated in unauthorized group activity. On the same date he was interviewed by defendants Hoover and Bubb. He claims that he was advised by defendants Hoover and Bubb that he would be released from Administrative Custody immediately, but he was not. He filed a request for review of the situation with the Program Review Committee who interviewed him on June 25, 2003. Defendant Chesney denied his request to be released from Administrative Custody. On July 8, 2003, the plaintiff was transferred to SCI-Smithfield. On July 10, 2003, the plaintiff was interviewed by the SCI-Smithfiled Intelligence Captain who allegedly accused the plaintiff of

6

attempting to recruit inmates for the Nation of Islam with the intention of starting a riot between Nation of Islam inmates and inmates of the Aryan Brotherhood, a white supremacist group. The plaintiff told the officer that such accusations were untrue, and that he believed that they were motivated by racial animus and a desire to retaliate against him because he had filed a Religious Accommodations Request while at SCI-Retreat.

Specifically, the plaintiff states that on April 23, 2003, he filed a Religious Accommodation Request with SCI-Retreat prison administration which complained that Nation of Islam adherents were willfully, knowingly, routinely and systematically being denied the right to practice their faith because they were being excluded from Islamic religious services, and that it was believed this was motivated by a prejudicial and discriminatory campaign against the Nation of Islam. He requested that separate Nation of Islam services be provided, or that the group be allowed to meet. He filed a proposed plan, to initiate Nation of Islam religious services at the prison. The request was denied. The plaintiff claimed that although Sunni Islamic services were available at the prison, he had allegedly been told by the Imam that Nation of Islam adherents were not permitted to participate in those services.

The plaintiff was released from Administrative Custody on the date that he was interviewed by the Intelligence Captain. The plaintiff filed an appeal of the decision to place him in Administrative Custody and to transfer him to SCI-Smithfiled on July 22, 2003, which was denied on August 7, 2003.

The plaintiff avers that defendants Wilde, Bubb, and Hamilton conspired to retaliate against him for filing the Religious Accommodation Request by fabricating reports, falsifying documents, causing his transfer from SCI-Retreat, and falsely accusing him of engaging in militant actions with the Nation of Islam, including recruiting new members in order to start a riot against the Aryan Brotherhood.

In response to the complaint, and in support of their motion for summary judgment, the defendants assert that the plaintiff was not placed in administrative custody for any reason having to do with the Religious Accommodation Request, but rather he was segregated from general population because prison administration had observed that he, and several other inmates, were congregating in prison areas and it was believed that they were attempting to engage in unauthorized group activity. Specifically, the defendants aver that both the Nation of Islam and the Aryan Brotherhood have a prison history of militant activity, and as a result prison administration are vigilant in enforcing the ban on unauthorized inmate group activity.

The defendants argue that they are entitled to summary judgment because the plaintiff can put forth no facts to show that the conduct for which he was sanctioned is constitutionally protected. In this connection the defendants maintain that the plaintiff cannot show a causal connection between his having filed the Religious Accommodation Request and his being placed in Administrative Custody. The plaintiff did not file a response, or in

any other manner oppose the motion for summary judgment.[2]

After having carefully reviewed the record in this matter it appears that the defendants are entitled to summary judgment as a matter of law because the plaintiff has put forth no facts to show either that he suffered an adverse consequence as a result of constitutionally protected conduct, or that there was a causal connection between the plaintiff's Religious Accommodation Request and his placement in Administrative Custody.

In support of their motion for summary judgment the defendants offer the declaration of defendant Charles Erickson, Superintendent SCI-Retreat. He stated that as Superintendent he is charged with overseeing certain operational functions, which include the safety and security of all inmates. In this connection he is cognizant of the need to prevent inmates from forming informal groups which could constitute a threat to the security of the general population. In accordance with DOC-ADM 801, engaging in, or encouraging unauthorized group activity within the prison is prohibited and subject to disciplinary action. Defendant Erickson states further that in June 2003, inmates identified as members of the Nation of Islam were observed congregating, or attempting to congregate, in various areas of the prison. The plaintiff was observed to be among this group. As a result, he was placed in Administrative Custody on June 20, 2003, pending further investigation.

---

[2]Hence the court reviews this matter pursuant to the dictates of <u>Stackhouse v. Mazurkiewicz</u>, 951 F.2d 29 (3d Cir. 1992).

Being perceived as a potential threat to prison security, it was decided that the plaintiff would be transferred to a different institution. On July 8, 2003, the plaintiff was transferred to SCI-Smithfield.

As a threshold matter, a prisoner-plaintiff in a retaliation case must show that the conduct which led to the alleged retaliation was constitutionally protected. *See* Thaddeus-X v. Blatter, 175 F.3d 378 (6th Cir. 1999)(en banc); Drexel v. Vaughn, 1998 WL 151798 (E.D. Pa.). The plaintiff has not set forth any facts or evidence to controvert the defendants assertion that he was placed in Administrative Custody for valid penological reasons, and not for any reason related to his Religious Accommodation Request. It is purely speculation on the part of the plaintiff that he was placed in Administrative Custody, and then transferred to SCI-Smithfield, as a result of his request that Nation of Islam adherents be permitted to have religious services of their own, separate and distinct from the Islamic services already available and in place at the prison. Thus, the plaintiff has not established that the conduct which led to the alleged retaliation was constitutionally protected.

Neither has the plaintiff shown a temporal causal link between the filing of the Religious Accommodation Request and his placement into Administrative Segregation. He filed the Religious Accommodation Request on April 23, 2003. It was not until nearly two months later that the he was placed in Administrative Custody on June 20, 2003. There is, therefore, no apparent temporal causal link between the filing of the request and his

placement in Administrative Custody.

It is well established that the task of prison administration is difficult, and that courts should afford deference to decisions of prison officials, who possess the necessary expertise. Shaw v. Murphy, 532 U.S. 223 (2001). In Turner v. Safely, the United States Supreme Court held that a prison regulation that impinges on the constitutional rights of inmates may nevertheless be valid if it can be shown that the regulation in question serves a valid penological interest.  Here, the defendants have set forth in the declaration of defendant Erickson that there is a valid penological objective in enforcing the policy which prohibits unauthorized group activity.  The plaintiff has put forth nothing, other than bald assertions, to demonstrate that his alleged campaign to initiate Nation of Islam religious services was a substantial or motivating factor in his being removed from the general population and subsequently transferred to SCI-Smithfiled.  That being the case, summary judgment in favor of the defendants is warranted, and should be granted.

## IV.    RECOMMENDATION

Based on the foregoing, **IT IS RECOMMENDED THAT** the defendants' motion for summary judgment (Doc. No. 49) be **GRANTED** in its entirety.

s/ Malachy E. Mannion
**MALACHY E. MANNION**
**United States Magistrate Judge**

Dated:   July 27, 2005
O:\shared\REPORTS\04-0180.wpd